IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RANDY CAMPBELL,
    Plaintiff,

vs.                                                                 Case No. 3:05cv113/EMT

C.O. C. JOHNSON,
    Defendant.
_____/

**ORDER**

    This case filed pursuant to 42 U.S.C. § 1983 is now before the court on Defendant's motion for summary judgment with supporting documents (Docs. 92, 93) and Plaintiff's response with supporting documents (Doc. 102). Upon review of the parties' submissions, it is the opinion of the undersigned that Defendant's motion for summary judgment should be denied.

I.    PROCEDURAL HISTORY

    Plaintiff filed his fourth amended complaint alleging a violation of his Fourteenth Amendment right to adequate medical care by virtue of several Defendants' depriving him of use of a walking cane and reassigning him to general population when they knew that the policy in effect at the time of the reassignment prohibited Plaintiff from having a cane in general population (Doc. 22). Defendants filed a motion for summary judgment, which the court granted in part, dismissing Plaintiff's claims against Defendants Hall, Prater, and Mims, and denied in part, allowing Plaintiff's claim against Defendant Johnson to survive (*see* Doc. 66). On November 19, 2007, the parties were ordered to mediate this matter, and a trial date was set (Doc. 90). In the instant motion for summary judgment, Defendant asserts that this action should be dismissed because Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a) (Doc. 92).

II.     FACTS

The following material facts are without substantial controversy.[1]  At all times relevant to this action Plaintiff was an inmate at the Walton County Jail (Jail), and Defendant was a correctional officer at the Jail.  In August of 2003, Plaintiff was involved in an automobile accident that required him to have two reconstructive surgeries on his lower left leg; the latest surgery occurred on February 17, 2004 (Doc. 22, ¶¶ 6–8).  As a result of the surgeries, Plaintiff suffered extreme pain and swelling in this leg and was unable to walk without the assistance of a walker or crutches (*id.* ¶ 8; Doc. 102, Affidavit of Randy Campbell ¶ 3).  On May 12, 2004, Plaintiff was arrested and transported to the Jail (Doc. 22 ¶¶ 9, 10; Doc. 102, Campbell Aff. ¶ 3).  At the time of his arrest, he was unable to stand or put significant weight on his leg for any substantial period of time, and his physician had prescribed pain medication and use of a walking device (Doc. 22 ¶¶ 9, 10, 12; Doc. 102, Campbell Aff. ¶ 3–4).  The arresting officer refused Plaintiff's request to bring his walker to the Jail (Doc. 22 ¶ 9).  During the booking process, Plaintiff informed the booking officer that movement without his walker caused pain and swelling in his leg, and he requested use of a walker (*id.* ¶¶ 10, 11).  The booking officer told Plaintiff to inform the nurse of his medical problems during his medical intake (*id.* ¶ 12).  The booking officer assigned Plaintiff to the general population (Doc. 22 ¶12; Doc. 102, Campbell Aff. ¶ 6).  A few days later, Plaintiff was seen by a doctor and prescribed Ibuprofen to alleviate pain in his leg (Doc. 22 ¶ 14).  While assigned to the general population, Plaintiff had to walk/hop to the dining hall and stand in a long line to receive his meals, and this movement without the assistance of a walking device caused his leg to become infected, swollen, and painful (*id.* ¶ 15).  Plaintiff sought medical attention and as a result, on June 29, 2004, he was reassigned to cell block 211, a close management unit housing inmates who require close

---

[1] The court conveys as facts those factual allegations of Plaintiff's verified fourth amended complaint (Doc. 22), Defendant's affidavits and documentary evidence in support of his motion for summary judgment (Docs. 92, 93), and Plaintiff's affidavit and documentary evidence in support of his response to Defendant's motion (Doc. 102), to the extent they comply with the requirements for affidavits specified in Rule 56 — that they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e); *see, e.g.*, Dickinson v. Wainwright, 626 F.2d 1184, 1186 (5th Cir. 1980); Murrell v. Bennett, 615 F.2d 306, 310 n.5 (5th Cir. 1980).  If a fact is not included in this section, it is because the court has determined that it is not a material fact, the proponent's assertion of the fact is not based upon personal knowledge, or the fact is presented as hearsay and could not be reduced to admissible evidence at trial or reduced to admissible form.

Case No.:  3:05cv113/EMT

supervision due to their pending charges, disciplinary matters, or medical reasons (*id.* ¶¶ 16, 17; Doc. 102, Campbell Aff. ¶ 6).  Plaintiff was directed to keep weight off his leg and given a walking cane to use when he was moving about the housing unit; he was also provided an extra blanket to elevate his leg while lying down and ice packs to relieve swelling (Doc. 22 ¶ 17).  While Plaintiff was housed in cell block 211, all of his meals and medication were brought to him, so he was not required to walk to the dining area and stand in line (*id.* ¶ 18).  Although Plaintiff continued to suffer some swelling in his leg and extreme pain, the treatment relieved much of the pain and discomfort (*id.* ¶ 19).

On February 17, 2005, Defendant Johnson, a transport officer, told Plaintiff to ready himself for a court appearance (Doc. 22 ¶ 20).  Plaintiff stepped out of his cell with his walking cane, since he had been permitted to use a walking cane at all of his prior court appearances (Doc. 102, Affidavit of Randy Campbell ¶ 9).  Defendant Johnson told him to leave the walking cane in the cell block because Plaintiff did not need it (Doc. 22 ¶ 21).  Plaintiff informed Defendant Johnson that the cane was prescribed by the medical staff, that he had been permitted to use it to attend previous court appearances, and that he could not walk long distances without the cane (*id.* ¶¶ 22, 24, 25; Doc. 102, Campbell Aff. ¶ 10).  Plaintiff also showed Defendant Johnson his disfigured leg (Doc. 102, Campbell Aff. ¶ 10).  Defendant Johnson made no attempt to confirm whether Plaintiff required walking support, took the cane from Plaintiff and placed it in the control room, handcuffed and shackled Plaintiff, and accused him of seeking sympathy from the judge (Doc. 22, ¶¶ 23–25, 32; Doc. 102, Campbell Aff. ¶ 11).  Defendant Johnson did not have authority to take Plaintiff's cane because the decision of whether an inmate may possess a walking cane is made by the medical staff (Doc. 43, Johnson Affidavit ¶ 6).  Plaintiff was forced to stand handcuffed and shackled without his cane while at least forty other inmates were secured; he then had to walk/hop to the front of the Jail and walk/hop 300 yards to the courthouse (Doc. 22 ¶ 29; Doc. 102, Campbell Aff. ¶ 12).  When Plaintiff returned to the Jail, Plaintiff verbally complained to Defendant Johnson and Sergeant Hall that he was in extreme pain and requested that his cane be returned (Doc. 22 ¶¶ 30–32; Doc. 102, Campbell Aff. ¶ 14).  Defendant Johnson and Sergeant Hall refused to return the cane (Doc. 102, Campbell Aff. ¶ 14).  Later that day, Plaintiff was placed in a solitary confinement cell in the medical unit (Doc. 22 ¶¶ 35–36; Doc. 102, Campbell Affidavit ¶ 15).  On that evening or the

evening of February 18, 2005, Plaintiff completed an inmate request form requesting that his cane be returned to him (Doc. 102, Campbell Aff. ¶ 15). There was no copy attached to the Inmate Request form for Plaintiff to keep (*id.*). Over the following weeks, Plaintiff received no response to his request (*id.* ¶ 16). He also did not receive his cane or permission to use anything to assist him in walking (*id.*). During March of 2005, Plaintiff filled out and submitted one or two additional inmate request forms requesting that his cane be returned (Doc. 102, Campbell Aff. ¶ 17). Plaintiff specifically recalls giving the request form to an officer and a trustee on different occasions (*id.*). As with the previous request forms, there were no copies attached to the form for Plaintiff to keep (*id.*). Throughout February and March of 2005, Plaintiff verbally requested permission to use a cane from different sergeants and lieutenants who he saw each day, and Plaintiff asked why he had not received a response to his requests (Doc. 102, Campbell Aff. ¶ 18). Plaintiff was told by jail staff that his complaints were given to Captain Mims, and he would have to wait for her decision (*id.*).[2]

On March 17, 2005, Plaintiff was taken to see Captain Mims (Doc. 102, Campbell Aff. ¶ 19). During the meeting, Plaintiff complained about being deprived of the walking cane and showed Captain Mims his swollen leg (*id.*). Plaintiff recalls seeing his complaint forms on Captain Mims' desk (*id.*). Captain Mims responded that she would need to investigate the matter (*id.*). Two days later, on March 19, 2005, Plaintiff was reassigned to the general population, where he was still deprived of use of the walking cane and continued to suffer extreme pain (*id.* ¶ 20).

On March 23, 2005, Plaintiff filed a medical request form requesting a walking cane (*see* Doc. 43, Affidavit of Captain Mims ¶ 14, attached Inmate Medical Request Form). The request was denied by the medical department (*id.*). Plaintiff verbally complained to the nurse who dispensed medication, and he requested that a walking can be provided, but the nurse responded that the new Jail policy prevented the possession of walking canes in general population (Doc. 102, Campbell Aff. ¶ 21).

Plaintiff believed that after he had met with Captain Mims, who he understood to be at the top of the chain of command, there was no one else to complain to about the deprivation of his cane

---

[2]These statements by Jail staff are not hearsay to the extent Plaintiff offers them as evidence that he complained about being deprived of his cane and his complaints were received by Jail staff.

Case No.: 3:05cv113/EMT

(Doc. 102, Campbell Aff. ¶¶ 22, 27).  When Plaintiff was advised that Captain Mims had denied his request because of the new Jail policy, he believed he had exhausted his administrative remedies (*id*.).  Even after Plaintiff met with Captain Mims, he did not receive the return of any written complaint he had submitted regarding the deprivation of his cane (*id*. ¶ 23).  Plaintiff was never told that inmates could or should file complaints directly with the Sheriff (*id*. ¶ 28).

According to Lieutenant Toby Prater, Lieutenant William Price, and Sheriff Ralph Johnson, all of whom have personal knowledge as to the manner in which inmates housed at the Jail during 2004 and 2005 could submit requests or grievances with respect to issues they wished to have addressed, inmates completed an Inmate Request form (Doc. 92, Affidavit of Toby Prater ¶¶ 4–5, Affidavit of William Price ¶¶ 3–4, Affidavit of Ralph Johnson 1–3).  The appropriate staff member would provide a written response on the Inmate Request form, and the form was then returned to the inmate (*id*., Prater Aff. ¶ 5, Price Aff. ¶ 4, Johnson Aff. ¶ 3).  If for some reason an inmate did not receive a response to a request or grievance, the inmate "could" submit another request or grievance (*id*., Prater Aff. ¶ 6, Price Aff. ¶ 5).  The inmate "could" also file a request or grievance complaining about the failure to receive a response (*id*.).  If an inmate was not satisfied with a response or failed to receive a response, the inmate "could" submit additional Inmate Request forms through the chain of command, including submitting requests to a sergeant, lieutenant, or captain (*id*., Prater Aff. ¶ 7, Price Aff. ¶ 6).  Alternatively, an inmate "could" submit a written request directly to Sheriff Johnson setting forth the inmate's grievance, dissatisfaction with a response, or explaining that he or she did not receive a response to a grievance (*id*., Prater Aff., ¶ 9, Price Aff., ¶ 6, Johnson Aff. ¶ 4).

Neither Lieutenant Prater, Sheriff Johnson, nor the medical department received an Inmate Request from Plaintiff in which he complained about Defendant Johnson's depriving him of his walking cane when he attended his court appearance (Doc. 92, Prater Aff. ¶¶ 8–9, Johnson Aff. ¶ 6, Affidavit of Dawn Cooper ¶¶ 3–5).

III.   LEGAL STANDARDS

    A.   <u>Summary Judgment Standard</u>

Case No.: 3:05cv113/EMT

In order to prevail on their motion for summary judgment, Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986). If Defendant successfully negates an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." *Id.*; *accord* Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). Further, Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. Celotex Corp., 477 U. S. at 324 (quoting Fed. R. Civ. P. 56(e)). Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'") (quoting Celotex Corp., 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c), (e))); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994). The Eleventh Circuit has consistently held that conclusory allegations without specific supporting facts have no probative value, and are legally insufficient to defeat summary judgment. *See* Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir.2000); Sammons v. Taylor, 967 F.2d 1533, 1544–45 & n.5 (11th Cir. 1992).

Evidence presented by Plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to Plaintiff. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999). A motion for summary judgment should

be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 322.

  B.  Exhaustion of Administrative Remedies

  The Prison Litigation Reform Act, 42 U.S.C. § 1997e (PLRA), provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has recently stated that this "invigorated" exhaustion requirement is the "centerpiece" of the PLRA. Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2382, 165 L. Ed. 2d 368 (2006). The exhaustion requirement helps to ensure that the "flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." Jones v. Bock, --- U.S. ----, 127 S. Ct. 910, 914, 166 L. Ed. 2d 798 (2007). It also "attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Woodford, 126 S. Ct. at 2387 (quoting Porter v. Nussle, 534 U.S. 516, 525, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002)) (footnote omitted). The exhaustion requirement is mandatory, and there is no discretion to waive it. Woodford, 126 S. Ct. at 2382; Alexander v. Hawk, 159 F.3d 1321, 1324–26 (11th Cir. 1998). Additionally, the PLRA exhaustion requirement requires proper exhaustion, which means that a prisoner must comply with the procedural rules of the institution's grievance system. Woodford, 126 S. Ct. at 2387–88.

  However, prisoners are required to exhaust only administrative remedies that are "available." 42 U.S.C. § 1997e. Even though remedies may be in place, they are not "available" if they are "remedies or requirements for remedies that an inmate does not know about and cannot discover through reasonable effort by the time they are needed." *See* Goebert v. Lee County, — F.3d —, 2007 WL 4458122, at *7 (11th Cir. Dec. 21, 2007); *see also* Brown v. Sikes, 212 F.3d 1205, 1207–08 (11th Cir. 2000) (holding that a prisoner must "provide as much relevant information as he reasonably can in the administrative grievance process, . . . [but] a grievance procedure that requires a prisoner to provide information he does not have and cannot reasonably obtain is not a

remedy that is 'available' to the prisoner"); Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004) ("The test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." (internal quotation marks omitted)); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) ("[A] remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a) . . . ." (second alteration in original)). As the Eleventh Circuit noted in Goebert,

> [if Jail officials keep an inmate] in the dark about the path she was required to follow, the defendants should not benefit from her inability to find her way.
> . . . .
> If we allowed jails and prisons to play hide-and-seek with administrative remedies, they could keep all remedies under wraps until after a lawsuit is filed and then uncover them and proclaim that the remedies were available all along.

Goebert, 2007 WL 4458122, at *7–8.

Additionally, some courts have held that purported requirements of prison grievance procedures, even if they are set forth in a written handbook or guidelines, are not "available administrative remedies" for PLRA purposes if the written procedures are not mandatory, exclusive, and expeditious. *See* In re Bayside Prison Litigation, 190 F. Supp. 2d 755, 771–72 (D.N.J. 2002) (complaint procedure described in handbook could not be considered an administrative remedy for purposes of PLRA's exhaustion requirement where "handbook creates the clear impression that the use of the [] grievance procedure is optional not mandatory," and the described grievance process is not expeditious "in that it did not require administrators to respond to complaints . . . in any specific time period."); Martin v. Sizemore, No. Civ.A. 05-CV-105-KKC, 2005 WL 1491210, at *2 (E.D. Ky. June 22, 2005) (administrative remedies were not "available" to plaintiff because policy set forth in inmate handbook was not a PLRA-compliant mandatory administrative remedy, based upon the following: (1) it merely suggested that inmate "may" file grievance, (2) it was not exclusive in that nowhere did it indicate that it provided the sole method inmate may utilize in registering a grievance, (3) it made no reference to the PLRA, (4) it did not state that grievance was mandatory for any purpose, (5) it was misleadingly entitled "Complaints" as opposed to "Grievance" or "Administrative Remedy", and (6) it stated that only "legitimate" complaints would be answered).

The Eleventh Circuit has not decided, as some of its sister circuits have, how much less than perfect compliance with administrative remedies is enough to constitute exhaustion, or what, if any, exceptions to the exhaustion requirement exist. *See* Dole v. Chandler, 438 F.3d 804, 811 (7th Cir. 2006) (holding that a prisoner properly exhausted his administrative remedies when the jail lost his timely grievance form but the prisoner did not attempt to re-file his complaint); Hemphill, 380 F.3d at 689 (recognizing "special circumstances" that permit less than perfect compliance, including reasonable but incorrect readings of the administrative procedures, and recognizing estoppel and failure to raise or preserve the defense as exceptions to the exhaustion requirement); Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004) (holding that substantial compliance with administrative procedures will exhaust them under the PLRA); Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002) (if applicable prison or jail regulations do not prescribe any particular content to inmate grievances, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming."); *see also* Woodford, 126 S. Ct. at 2393 (Breyer, J., concurring) (recognizing that § 1997e(a) requires proper exhaustion, but suggesting that traditional exceptions to administrative exhaustion also apply to it).

IV.   CONCLUSIONS OF LAW REGARDING MATERIAL FACTS

Upon review of the parties' submissions, the undersigned concludes that the only administrative remedy available to Plaintiff was the submission of a written Inmate Request form to a member of the Jail staff. Initially, there is no evidence of any handbook or other written guidelines setting forth an administrative grievance system at the Jail. Additionally, the only mandatory step in the grievance process described in the affidavits of Lieutenant Prater, Lieutenant Price, and Sheriff Johnson is the submission of an Inmate Request form—the additional steps are described in optional terms, that is, an inmate "could" submit another request or grievance if an inmate did not receive a response to a request or grievance, an inmate "could" also file a request or grievance complaining about the failure to receive a response, an inmate "could" submit additional Inmate Request forms through the chain of command, including submitting requests to a sergeant, lieutenant, or captain if an inmate was not satisfied with a response or failed to receive a response,

and an inmate "could" submit a written request directly to Sheriff Johnson setting forth the inmate's grievance, dissatisfaction with a response, or explaining that he or she did not receive a response to a grievance (Doc. 92, Prater Aff. ¶¶ 6, 7, 9, Price Aff. ¶¶ 5, 6, Johnson Aff. ¶ 4).  This evidence creates the clear impression that these additional steps are optional and non-exclusive, as opposed to mandatory and exclusive.  Furthermore, the process described by Lieutenant Prater, Lieutenant Price, and Sheriff Johnson is unpredictable, discretionary, and non-expeditious in that it does not require Jail staff to respond to complaints in a specific time frame and does not provide clear guidance as to the mandatory "next step" an inmate must take if he did not receive a response to an Inmate Request or was dissatisfied with the response he received.  Most importantly, there is no evidence of what Jail staff communicated to inmates in terms of the procedural rules of the grievance system, besides the requirement that they file an Inmate Request form with a member of the Jail staff, nor is there evidence of what Jail staff instructed inmates to expect when following the procedure.  Defendant contends that the fact that Plaintiff filed an Inmate Request directed to Captain Mims, Sergeant Holmes, and Lieutenant Prater regarding another issue within the same time period as the event giving rise to this lawsuit, and Plaintiff wrote a letter to the Walton County Commission when he was dissatisfied with the response he received, is evidence that Plaintiff was aware of the steps he could take if he did not receive a response to a grievance or was dissatisfied with it (*see* Doc. 92 at 4–6).  The undersigned views this argument as untenable and instead considers this to be evidence of the unpredictable and confusing nature of the "administrative remedy" process described in the affidavits of Jail officials.  Therefore, the undersigned concludes that the only administrative remedy available to Plaintiff at the Jail, for purposes of the PLRA, was the submission of a written request or grievance on the Inmate Request form to a member of the Jail staff.

The next issue is whether Plaintiff followed this available remedy.  In his special report, Defendant Johnson contends there is no evidence that Plaintiff filed a written grievance concerning his allegedly depriving Plaintiff of his walking cane (*see* Doc. 92 at 2).  In response, Plaintiff submitted an affidavit stating that on the evening of February 17, the day Defendant Johnson allegedly deprived Plaintiff of use of his cane, or the next evening, he submitted an Inmate Request form requesting that his cane be returned (Doc. 102, Campbell Aff. ¶ 15).  Construing the facts in

the light most favorable to Plaintiff, a jury could find that Plaintiff submitted an Inmate Request form requesting that his cane be returned to him. If the jury made such a determination, the undersigned determines that this was sufficient to fulfill the purpose of the PLRA's exhaustion requirement of "affording corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *See* Nussle, 534 U.S. at 525.

Accordingly, it is **ORDERED**:

Defendant's Motion for Summary Judgment (Doc. 92) is **DENIED**.

**DONE AND ORDERED** this 25th day of January 2008.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**